Johnny M. SHORT, Appellant,

v.

KIAMICHI AREA VOCATIONAL–TECHNICAL SCHOOL DISTRICT NO. 7 OF CHOCTAW COUNTY, Oklahoma, Appellee.

No. 66179.

Supreme Court of Oklahoma.

July 19, 1988.

As Amended Sept. 13, 1988.

Rehearing Denied Sept. 13, 1988.

Oklahoma Education Ass'n by Karen L. Long, Oklahoma City, for appellant.

Fenton, Fenton, Smith, Reneau & Moon by Ronald L. Day, Oklahoma City, for appellee.

KAUGER, Justice.

The four questions presented concerning the nonrenewal of a tenured teacher's contract are: (1) whether the school district/appellee failed to follow the Oklahoma School Code, 70 O.S. 1981 § 6–103.4(A), (B), (D) in its action for nonrenewal; (2) whether the decisions of the hearing panel and of the district court upholding the teacher's dismissal were based upon insufficient evidence, and thus clearly erroneous under 70 O.S. 1981 § 6–103.9(A); (3) whether the hearing panel's decision conformed with 70 O.S. 1981 § 6–103.11(B) by outlining the scope of the hearing and making findings of fact and conclusions of law directing nonrenewal; and (4) whether procedural due process requires that a tenured teacher be afforded a pretermination hearing before his teaching contract is either terminated or nonrenewed under *Cleveland Bd of Educ. v. Loudermill,* 470 U.S. 532, 545, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503–04 (1985).

We find that: (1) the prescribed prerequisites for nonrenewal under 70 O.S. 1981 § 6–103.4(A), (B), (D) were met by the Board; (2) the decision of the hearing panel which was based upon a preponderence of the evidence pursuant to 70 O.S. 1981 § 6–103.9 (A) was not clearly erroneous; (3) the Panel's decision followed the statutory requirements of 70 O.S. 1981 § 6–103.11(B). The dispositive question presented is whether procedural due process requires that a tenured teacher be afforded a pretermination hearing before his teaching contract is either terminated or nonrenewed. We find that pretermination hearings for tenured teachers are con-

stitutionally mandated under *Cleveland Bd. of Educ. v. Loudermill,* supra.

## FACTS

In 1974, Johnny M. Short, appellant/teacher, was employed by the Kiamichi Area Vocational–Technical School District, appellee, to teach a residential wiring course. After a decline of enrollment in the course, coupled with an increased demand for skilled electronics students, the residential wiring course was converted to an industrial electricity/electronics course.

On April 2, 1985, the School board advised the teacher by certified mail that his teaching contract was being nonrenewed. The Board found that the teacher's failure to secure certification as an electronics instructor constituted wilful neglect of duty. The teacher admits that he knew of the planned transition in the course as early as 1982. Nevertheless, he disputes the date upon which he was notified that his continued employment hinged upon his certification in electronics. The teacher contends that he was first informed on January 28, 1985, that the certification in electronics was a prerequisite to teaching the industrial electricity/electronics course. However, the school district presented evidence in posttermination proceedings that the teacher knew as early as August of 1982, that a major transition was occurring in the residential wiring course and that proficiency in electronics would be required.

In accordance with 70 O.S. 1981 § 6–103.4(D),[1] the teacher sought review of the Board's action before an administrative hearing panel (Panel). The Panel voted 2–1 to uphold the Board's decision. Its decision was affirmed by the district court, and the teacher appealed.

## I

### THE RIGHT TO A PRETERMINATION HEARING FOR TENURED TEACHERS IS MANDATED BY BOTH THE STATE AND FEDERAL CONSTITUTIONS.

The teacher argues that he has been deprived of procedural due process under both the United States and Oklahoma Constitutions. Although the teacher asserts other allegations of error in the nonrenewal of his contract, the question of whether a tenured teacher must be afforded a pretermination hearing before dismissal or nonreemployment is one of first impression in Oklahoma.

On March 19, 1985,[2] the United States Supreme Court promulgated *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 87 L.Ed.2d 494 (1985). The *Loudermill* Court, echoing Justice Powell's concurrence in *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed. 2d 15, 40 (1974), *reh. den.* 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974), that "the right to due process is conferred not by legislative grace but by constitutional guarantees"[3] held: 1) due process requires that tenured public employees must be afforded some form of pretermination opportunity to respond to charges leading to dismissal; and 2) if the termination involves arguable issues, the right to a hearing does not depend on a demonstration of certain success.

Nevertheless, before a pretermination hearing is required, it must be demonstrated that there is an existing right in contin-

---

1. Title 70 O.S. 1981 § 6–103.4(D) provides:
 "If a tenured teacher fails to notify the clerk of the local board of education within the ten-day period of his or her desire to have a hearing on his or her dismissal or nonreemployment conducted by a hearing panel, the teacher shall be deemed to have waived his or her right to a hearing and the initial determination of his or her dismissal or nonreemployment by the board of education shall become final and nonappealable. If, within the ten-day period, the tenured teacher notifies

 the clerk of the local school board of his or her desire for a hearing conducted by a hearing panel, the clerk shall, not later than the end of said period of time, notify the State Superintendent of Public Instruction of such request."

2. We note that the School Board sent its letter on April 2, 1985.

3. See also, L. Tribe, "American Constitutional Law", p. 709, § 10–12 (2nd Ed. 1988).

ued employment.[4] This right must arise from some independent source, e.g. state law, sufficient to create a legitimate claim of entitlement.[5] In *Loudermill,* the Supreme Court found that the Ohio Legislature had created a property interest in continued employment for tenured public employees.[6]

 It is undisputed that the teacher is a tenured teacher within the meaning of 70 O.S. 1981 § 6–102.1(6).[7] A tenured teacher's right to continued employment may be construed as a property interest subject to due process protection if the Legislature has created the right through statutory enactment.[8] Title 70 O.S. 1981 § 6–103.4(A)[9] provides that a tenured teacher may be removed for one or more of the statutory grounds set forth in § 6–103(A).[10] Section 6–103(A) provides that a teacher may be dismissed for cause based on specifically delineated grounds. Pursuant to 70 O.S. 1981 § 6–101(E) unless a school board contacts a regularly employed teacher prior to April 10th or unless by April 25th the teacher notifies the board that he/she has no interest in reemployment, the teacher is considered to be employed on a continuing contract basis for the next year.[11]

Under these statutes, a tenured teacher has more than an abstract need, desire, or

4. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494, 501 (1985); *Bd. of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548, 560–62 (1972).

5. *Cleveland Bd. of Educ. v. Loudermill,* see note 4, supra; *Bd. of Regents v. Roth,* see note 4, supra. See also, *Paul v. Davis,* 424 U.S. 693, 709, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405, 418–19 (1976); *Wood v. Indep. School Dist. No 141,* 661 P.2d 892, 894 (Okla.1983).

6. *Cleveland Bd. of Educ. v. Loudermill,* see supra note 4, 470 U.S. at 538, 105 S.Ct. at 1491. See also, Ohio Rev. Code Ann. § 124.34 (Supp. 1986) providing that classified civil servants may be removed for acts of "misfeasance, malfeasance, or nonfeasance in office."

7. Title 70 O.S.1981 § 6–102.1(6) provides:
 " 'Tenured teacher' or 'probationary teacher' means a duly certificated teacher who has completed three (3) or more consecutive complete school years of teaching service in one school district under a written teaching contract, as provided by law. Provided, however, that a school district employing a teacher who has previously held tenure within the state may grant tenure to said teacher upon renewal of said teacher's contract for the second year in the district."

8. *Wood v. Ind. School Dist. No. 141,* see note 5, supra.

9. Title 70 O.S.1981 § 6–103.4(A) provides in pertinent part:
 "Whenever a superintendent of a school district determines that cause exists for the dismissal or nonreemployment of a teacher employed within the school district, he or she shall submit a recommendation in writing to the board of education for such school district. In the case of a tenured teacher, the recommendation shall contain the one or more statutory grounds for the potential dismissal or nonreemployment...."

10. Title 70 O.S.1981 § 6–103(A) provides in pertinent part:
 "... any teacher may be dismissed at any time or not reemployed for immorality, willful neglect of duty, cruelty, incompetency, teaching disloyalty to the American Constitutional system of government, or any reason involving moral turpitude and any teacher shall be dismissed at any time or not reemployed if convicted of a felony, or if convicted of a felony resulting from a felony violation of the narcotic laws ..."

11. Title 70 O.S.1981 § 6–101(E) provides:
 "A board of education shall have authority to enter into written contracts with teachers for the ensuing fiscal year prior to the beginning of such year. If, prior to April 10, a board of education has not entered into a written contract with a regularly employed teacher or notified him in writing by registered or certified mail that he will not be employed for the ensuing fiscal year, and if, by April 25, such teacher has not notified the board of education in writing by registered or certified mail that he does not desire to be reemployed in such school district for the ensuing year, such teacher shall be considered as employed on a continuing contract basis and on the same salary schedule used for other teachers in the school district for the ensuing fiscal year, and such employment and continuing contract shall be binding on the teacher and on the school district. Provided that no district or any member of the board of education of a district shall be liable for the payment of compensation to a teacher under the provisions of the teacher's contract for the ensuing year, if it becomes 'necessary to close the school because of insufficient attendance, disorganization, annexation, consolidation, or by dispensing with the school according to

unilateral expection in continued employment.[12] Instead, the teacher has a legitimate claim of entitlement created by legislative enactment. We have previously recognized that although a teacher has no right to be employed in a particular position, a tenured teacher does have a right to continuing employment.[13]

■ The school district argues that *Loudermill* should be distinguished based primarily on economic concerns. It argues that tenured teachers, who face dismissal or nonreemployment, have not been deprived of any property right because they continue to draw wages during the pendency of the hearing before the review panel. They point out that public employees in *Loudermill* lost wages immediately upon dismissal. Not only is an argument that constitutional rights may be purchased in exchange for wages untenable, the record shows that the teacher did not draw a salary for at least a short time before the Panel's decision was rendered, and that the facts were disputed concerning when the teacher learned of the need to secure additional training. The *ratio decidendi* in *Loudermill* is not deprivation of wages, but interference with the legitimate expectation of continued employment—that constitutional guarantees of due process prevail over statutory procedures.[14]

Although *Harrah Indep. School Dist. v. Martin*, 440 U.S., 194, 197, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248, 253 (1979), did not specifically involve the right to a pretermination hearing, it is instructive. *Martin* held that a tenured teacher had no colorable claim of a denial of due process where the teacher was advised of the decision not to renew her contract and of her right to a hearing before the school board, *but that her failure to exhaust state administrative remedies did not defeat her right to prosecute a civil rights action under 42 U.S.C. § 1983*. The procedure reviewed in *Martin* was outlined by 70 O.S.Supp. 1976 § 6–122,[15] the forerunner to the statute at issue here, 70 O.S. 1981 § 6–103.4(B).[16]

law, provided, such cause is known or action is taken prior to July 1 of such ensuing year."

**12.** This is not a situation where a teacher has absolutely no interest in reemployment for the next year as the teacher did in *Bd. of Regents v. Roth*, see note 4 supra; nor is it a situation where the teacher must come within an implied tenure definition as in *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570, 579–80 (1972), in order for the property interest to attach.

**13.** *Maupin v. Ind. School Dist. No. 26*, 632 P.2d 396, 399 (Okla.1981).

**14.** Although the hearing was conducted on June 24–25, 1985, no decision was rendered until August 1, 1985. Short's contract expired on June 30, 1985. It appears no salary was paid from June 30 to August 1. Additionally, *Delaware St. College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431, 439–40 (1980), indicates that a deprivation can occur at the time the tenure decision is made and communicated even though one of the effects of denial of tenure, loss of a teaching position, does not occur until later.

**15.** Title 70 O.S.Supp.1976 § 6–122 (which was repealed in 1977) provides in pertinent part: "The failure by the board of education to renew the contract of any teacher who has completed three (3) years shall not be effective, and the contract shall be renewed unless

the board causes to be served on the teacher a written statment of the causes for such action, which must include one of the following: immorality, wilful neglect of duty, cruelty, incompetency, teaching disloyalty to the American Constitutional system of government, or any reason involving moral turpitude. The teacher shall be afforded an opportunity to appear before the board and confront his accusers, having the right to cross-examine all witnesses and offer any evidence to refute the statements and a reconsideration of the action theretofore made by the board."

**16.** Title 70 O.S.1981 § 6–103.4(B), provides: "If the local board of education approves the recommendation of the superintendent, or determines on its own volition that a teacher should be dismissed or nonreemployed, the board shall cuse written notice of the dismissal or nonreemployment to be mailed by certified mail, restricted delivery, with return receipt requested, to the teacher who is the subject of the action. In the case of a tenured teacher, the notice shall state the one or more statutory grounds for the dismissal or nonreemployment and the right of the teacher to have a hearing conducted by a hearing panel. In the case of a probationary teacher whose contract is not being renewed, the notice shall state the cause for nonrenewal and the right of the teacher to have a due process hearing conducted by the board of education. Pending final determination of a tenured or proba-

However, the two statutes differ in one material respect—the statute construed by the *Martin* Court provided a pretermination opportunity to be heard before the school board's decision became final. This is the precise fashion in which § 6–103.4(B) falls short of the *Loudermill* standard.

The Legislature's recent enactment of 70 O.S.Supp. 1987 § 6–102.4 [17] providing for the necessary procedural steps a board of education or school district must follow prior to the dismissal or nonreemployment of a full-time school administrator is also illuminating. Subsection (1) of § 6–102.4 provides that the administrator shall have the opportunity to a hearing before the local board of education prior to its decision becoming final. It is incongruous that the Legislature intended to afford procedural due process to school administrators, but not to school teachers.[18]

■ Here, the teacher's interest is clearly sufficient to warrant pretermination procedural safeguards. It is apparent that this claim, like the one of tenured public employees in *Loudermill,* arises to the status of a property interest. Once this interest is established, *Loudermill* requires that some form of pretermination hearing be provided. In the absence of a constitutionally adequate pretermination procedure, the nonrenewal failed to pass constitutional muster. *The statute, 70 O.S. 1981 § 6–103.4(B), insofar as it fails to provide a Loudermill pretermination hearing, is unconstitutional.* Post-termination remedies however elaborate, are insufficient;

some form of pre-termination hearing is required. Contrary to the implication in the dissent, we do not strike down § 6–103.4(B) post-termination proceedings. We simply hold that its procedures must be supplemented by a pretermination opportunity to be heard before the board of education reaches a final decision. A pretermination hearing provides additional protection—not less. (It should be noted that the pretermination hearing should be held before the local school board, and that one of the crucial reasons for the hearing is to avoid mistaken employment decisions by affording the teacher a pretermination opportunity to be heard. After the board resolves the issue, the post-termination hearing is before a different tribunal, the hearing panel.)

The fact that a pretermination hearing must be offered to a tenured teacher does not mean that the hearing must be elaborate. A full evidentiary proceeding is not required. The hearing serves as an initial check against erroneous decisions but it need not definitely resolve the propriety of the discharge. The determination should serve to resolve whether reasonable grounds exist to believe that the charges against the employee are true, and whether the grounds support the proposed action.[19] Procedural due process is provided by a pretermination opportunity to respond, coupled with the elaborate post-termination procedures provided by § 6–103.4.

The United States Supreme Court has established a four-part balancing test to

tionary teacher's dismissal or nonreemployment, the local board may have the teacher suspended if the board determines that the best interests and welfare of the students in the school district require such action. Such suspension shall not deprive the teacher of any compensation or other teaching benefits to which he or she would otherwise be entitled by law or pursuant to his or her teaching contract."

**17.** Title 70 O.S.Supp.1987 § 6–102.4 provides in pertinent part:
"Whenever the local board of education or the administration of a school district shall determine that the dismissal or nonreemployment of a full-time certified administrator from his administrative position within the school district should be effected, the administrator

shall be entitled to the following due process procedures:
(1) A statement shall be submitted to the administrator in writing prior to the dismissal or nonreemployment which states the proposed action, lists the reasons for effecting the action, and notifies the administrator of his right to a hearing before the local board of education prior to the action; ..."

**18.** We express no opinion as to whether the provision of the opportunity for a pretermination hearing to a school administrator and the denial of the same type hearing to a tenured teacher presents a denial of equal protection.

**19.** *Cleveland Bd. of Educ. v. Loudermill,* see note 4, 470 U.S. at 545–46, 105 S.Ct. at 1493–94, supra; see also, *Bell v. Burson,* 402 U.S. 535,

determine whether due process requires a particular procedure:[20] (1) the private interest affected by official action; (2) the risk of an erroneous deprivation of the interest through the process provided; (3) the probable value of any additional or substitute procedural safeguards; and (4) the government's interests including any burden additional procedures may impose.

In *Wood v. Ind. School Dist. No. 141 of Pottawatomie County*, 661 P.2d 892, 896 (Okla.1983), we weighed these same factors in determining whether hearsay evidence should be excluded from nontenured teachers' due process hearings. Although the balance was struck on the side of the school district in that instance, the existence of a tenured teacher's property interest in continued employment requires a different result—a pretermination hearing must be afforded.[21]

## II

### THE OPINION OF THE COURT SHALL BE GIVEN PROSPECTIVE EFFECT

■ We have determined that due process requires that tenured teachers facing either termination or nonrenewal must be afforded a pretermination opportunity to be heard. It remains for us to determine whether a *Loudermill* hearing should be afforded full retroactive effect, purely prospective effect, or retroactivity limited to this case. Procedural due process requires notice and an opportunity to be heard before a decision is made to terminate or to nonrenew a tenured teacher's contract.

However, neither the United States Constitution nor the Oklahoma Constitution mandate that judicial decisions be retrospectively operative. Rather, state courts are free to determine, as a matter of policy, the effective date of new rulings.[22]

In making such a determination, we must consider: (1) the purpose of the new rule; (2) the extent of reliance on old doctrines; and (3) the burden likely to be imposed on administering legal process due to additional litigation or curative actions.[23] The constitutionally defective procedure which has been in effect since 1977, provided a full panoply of protection *after* the decision to terminate or nonrenew a tenured teacher.

At the time Short's contract was nonrenewed, *Loudermill* had been promulgated for only two weeks. Therefore, the school board may not have known that a pretermination hearing was required to comport with procedural due process, and we find no other error in the proceedings. The new ruling corrects a prior defect caused by reliance on a constitutionally infirm statute.[24] Were we to apply our holding retroactively to all previous termination or nonrenewal proceedings, the holding would adversely effect and increase the workload of school boards, the first arbitrators of termination and nonrenewal decisions; administrative hearing panels; and the final reviewing bodies, the appellate courts.

Generally, determinations of this nature turn upon considerations of fairness and public policy.[25] A careful weighing of the three applicable factors—purpose, reliance,

540, 91 S.Ct. 1586, 1590, 29 L.Ed.2d 90, 95 (1971).

**20.** *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976).

**21.** See also, *Walters v. Oklahoma Ethics Comm.*, 746 P.2d 172, 176 (Okla.1987).

**22.** *Linkletter v. Walker*, 381 U.S. 618, 628–29, 85 S.Ct. 1731, 1737, 14 L.Ed.2d, 601, 608 (1965); *Great N. Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364–65, 53 S.Ct. 145, 148, 77 L.Ed. 360, 366 (1932); *Carlile Trust v. Cotton Petroleum Corp.*, 732 P.2d 438, 445 (Okla.1986); *Cox v. Broadway*, 708 P.2d 1085, 1088 (Okla.1985); *Griggs v. State ex rel. Oklahoma Dept. of Transp.*, 702 P.2d 1017, 1020 (Okla.1985);

*Thompson v. Presbyterian Hosp., Inc.*, 652 P.2d 260, 268 (Okla.1982).

**23.** *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971); *Linkletter v. Walker*, see note 22, 381 U.S. at 629, 85 S.Ct. at 1737, supra; *Carlile Trust v. Cotton Petroleum*, see note 22, 732 P.2d at 445, supra; *Thompson v. Presbyterian Hosp.*, see note 22, 652 P.2d at 268, supra.

**24.** Title 70 O.S.1981 § 6–103.4, see note 16, supra.

**25.** See, *Chevron Oil Co. v. Huson*, note 23, 404 U.S. at 106–07, 92 S.Ct. at 355, supra; *Carlile Trust v. Cotton Petroleum Corp.*, note 22, 732 P.2d at 448, supra.

and burden—[26] requires that our pronouncement be given purely prospective effect. This opinion shall be applicable prospectively to all termination or nonrewenal cases involving tenured teachers occurring after the mandate herein is issued.[27]

REVERSED.

DOOLIN, C.J., and HARGRAVE, V.C.J., and HODGES, LAVENDER and ALMA WILSON, JJ., concur.

OPALA, J., concurs in part, dissents in part.

SUMMERS, J., concurs in Part I, dissents from Part II.

SIMMS, J., dissents.

SIMMS, Justice, dissenting:

I dissent. The constitution does not require finding fault with the procedures used here in the nonrenewal of this teacher's contract. The majority's reliance on the Supreme Court decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), is misplaced as that action is clearly distinguishable and is not controlling here.

It is true that *Loudermill* held that some kind of hearing must be afforded an employee with a constitutionally protected property interest in his employment prior to discharge. The majority, however, misapprehends that holding as requiring a hearing before the *decision* is made to terminate or nonrenew a contract. It is not the employer's initial decision to terminate the employee which triggers the need for a hearing. It is, rather, the termination itself which must be accorded procedural safeguards. Due process requires notice and the opportunity for a pretermination hearing before the employee is *deprived* of that protected property interest.

In my view, that is precisely what our statutes provide. They fully meet the requirement of *Loudermill* by affording an employee notice of the charges and a complete due process hearing providing an opportunity to respond and present his side of the story prior to the time the "termination takes effect". At 1494.

Mr. Short was not "terminated" when he received his notice. Under our statutory scheme Mr. Short continued to teach and received his wages and benefits under his existing contract from the time he received his notice in April until after his hearing, at the end of the school's fiscal year on June 30th. His evidentiary hearing, originally scheduled for May was continued *at his request* until June.[1] Pursuant to 70 O.S. 1981, § 6–103.4(B), a teacher, even if suspended, continues to work and receives wages following notice of a proposed contract nonrenewal or discharge until final determination of the action.

The majority dismisses as insignificant the very real differences between this case and *Loudermill*. Here Mr. Short continued to teach under the existing contract and drew wages until June 30, the end of the school's fiscal year and after his due process hearing. In *Loudermill*, however, the employees were summarily "terminated" with their notice; their wages were cut off and they lost their jobs. In representing this point as an "untenable" argument that "constitutional rights may be purchased in exchange for wages", the majority misapprehends the surrounding constitutional principles. It is the wages in *Loudermill* which constitute the essence of the "significant property interest" that is entitled to constitutional protection; the wages cannot be taken away without due process of law. Constitutional protections do not

---

**26.** *Linkletter v. Walker*, see note 22, 381 U.S. at 629, 85 S.Ct. at 1737, supra; *Carlile Trust v. Cotton Petroleum*, see note 22, 732 P.2d at 445, supra; *Thompson v. Presbyterian Hosp.*, see note 22, 652 P.2d at 268, supra.

**27.** See, *Chevron Oil Co. v. Huson*, note 23, 404 U.S. at 106–07, 92 S.Ct. at 355, supra; *Carlile Trust v. Cotton Petroleum Corp.*, note 22, 732 P.2d at 448, supra.

**1.** The Findings of Fact and Conclusions of Law of the Panel show that the hearing was originally scheduled for May 31, and was continued until June 24 and 25 at appellant's request. It also noted that counsel for appellant also "waived any objections to the date of the decision" in order to have additional time to study the transcript and prepare briefs.

exist in a vacuum. They arise to prevent the loss of a significant interest.

The decision in *Loudermill* is a reaction to the summary taking of wages. That is why the court points out there that if the government perceives a significant hazard in keeping an employee on the job until the appeal process is final, "it can avoid the problem by suspending with pay". At 1495.

That is precisely what Oklahoma has provided in its statutes.

Because Mr. Short and other employees are not "terminated" when they receive notice, there is no need for the protection of a "pretermination" hearing at any point prior in time to the 70 O.S.1981, § 6–103.4 hearing.

The majority's additional observation that the due process protection offered administrators by § 6–102.4 supports the result reached here is puzzling. Administrators, the majority points out, receive a hearing on their proposed dismissal or non-reemployment before the local board of education prior to its decision becoming final.

This, the majority says, is "procedural due process". This is to be distinguished, in the majority's opinion, from what is afforded tenured teachers under § 6–103.4, which the majority perceives as less than procedural due process. I do not agree with the majority's perception of § 6–102.4 as offering "better" or "more substantial" due process protections. I find rather that the procedure for hearing before the local board is "barebones" and quite limited. It is adequate only for the purpose for which it was designed—to give minimal protection to *nontenured* employees—administrators and probationary teachers. Both groups, of course, have no claim to tenure. See: §§ 6–102.1(4)(6); 6–103.1; and *Bd. of Educ. Vici Schools v. Morris*, Okl., 656 P.2d 258 (1983).

Under our statutes, both groups are entitled to only a hearing before the local board from which there is no right of appeal. Tenured teachers on the other hand are guaranteed many procedural protections for their hearing under § 6–103.4.

Those statutes are set forth in the Appendix.

These statutes, together with § 103.4, appear to me to be a serious and studied effort by the Legislature to protect tenured teachers and guarantee them abundant procedural due process protections in meeting and refuting charges against them.

It occurs to me that while the majority believes it is adding protections for teachers, it is in reality taking them away. I do not believe that tenured teachers across the state will view striking § 103.4 with its attendant protections, and moving toward § 102.4 as a step up the rungs of the constitutional ladder.

In *Harrah Independent School District v. Martin*, 440 U.S. 197, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979), the Supreme Court held only that nonrenewal of a teacher's contract for her refusal to earn required college credits, was rationally related to the school board's objective of enforcing the continuing education obligation of its teachers and did not deprive her of equal protection. There the Supreme Court cautioned that their cases provide an "analytical framework" which should be employed in determining whether Fourteenth Amendment rights have been violated. The Court observed that while their decisions "do not form a checkerboard of bright lines between black squares and red squares, neither do they leave courts, and parties litigating federal constitutional claims in them, quite as much at sea as the Court of Appeals apparently thought was the case." at 198. Following that advice in this case, leaves only the conclusion that constitutional rights have not been violated here. The "property interests" of tenured teachers are fully protected by our statutes. Mr. Short and those others similarly situated, receive notice and an opportunity to be heard before their discharge or nonrenewal is effected. They do not lose their wages or their positions pending the determination. Of what interest then are the individuals deprived without due process?

Our statutes provide, and this particular individual received, all due process require-

ments necessary to protect these property rights. I would so hold.

## APPENDIX

### § 6–103.4. Dismissal or nonreemployment of teacher—Procedure

A. Whenever a superintendent of a school district determines that cause exists for the dismissal or nonreemployment of a teacher employed within the school district, he or she shall submit a recommendation in writing to the board of education for such school district. In the case of a tenured teacher, the recommendation shall contain the one or more statutory grounds for the potential dismissal or nonreemployment. The recommendation for the dismissal or nonreemployment of either a tenured or a probationary teacher shall be approved or rejected upon a majority vote of the board's members.

B. If the local board of education approves the recommendation of the superintendent, or determines on its own volition that a teacher should be dismissed or nonreemployed, the board shall cause written notice of the dismissal or nonreemployment to be mailed by certified mail, restricted delivery, with return receipt requested, to the teacher who is the subject of the action. In the case of a tenured teacher, the notice shall state the one or more statutory grounds for the dismissal or nonreemployment and the right of the teacher to have a hearing conducted by a hearing panel. In the case of a probationary teacher whose contract is not being renewed, the notice shall state the cause for nonrenewal and the right of the teacher to have a due process hearing conducted by the board of education. Pending final determination of a tenured or probationary teacher's dismissal or nonreemployment, the local board may have the teacher suspended if the board determines that the best interests and welfare of the students in the school district require such action. Such suspension shall not deprive the teacher of any compensation or other teaching benefits to which he or she would otherwise be entitled by law or pursuant to his or her teaching contract.

C. Within ten (10) days of receipt of the notice, the tenured or probationary teacher shall notify by certified mail, restricted delivery with return receipt requested, the clerk of the local board of education of his or her respective decision.

D. If a tenured teacher fails to notify the clerk of the local board of education within the ten-day period of his or her desire to have a hearing on his or her dismissal or nonreemployment conducted by a hearing panel, the teacher shall be deemed to have waived his or her right to a hearing and the initial determination of his or her dismissal or nonreemployment by the board of education shall become final and nonappealable. If, within the ten-day period, the tenured teacher notifies the clerk of the local school board of his or her desire for a hearing conducted by a hearing panel, the clerk shall, not later than the end of said period of time, notify the State Superintendent of Public Instruction of such request.

E. If a probationary teacher fails to notify the clerk within the ten-day period of his or her desire to have a due process hearing on his or her dismissal or nonreemployment conducted by the local board of education, the teacher shall be deemed to have waived his or her right to the hearing and the initial determination of his or her dismissal or nonreemployment by the board of education shall become final and nonappealable. If, within the ten-day period, the probationary teacher notifies the clerk of the board of education of his or her desire to have a due process hearing on his or her dismissal or nonreemployment conducted by such board, the board shall, as soon as possible, hold a hearing. At the hearing the probationary teacher shall be afforded all such procedural due process rights as are guaranteed by the Oklahoma and United States Constitutions. At the conclusion of the hearing, the local board of education shall render a final and nonappealable decision on the question of the probationary teacher's dismissal or nonreemployment.

### § 6–103.5. Hearing judge list

A. There is hereby created a hearing judge list which shall consist of the names

of not less than two hundred Oklahoma attorneys with trial experience provided by the Oklahoma Bar Association; provided, however, that no member of the Legislature shall be included on said hearing judge list or be eligible to serve as a hearing judge.

B. The individuals on the hearing judge list shall be appointed for terms of four (4) years or until their resignation or removal for cause by the State Board of Education or the Oklahoma Bar Association. Vacancies shall be filled in the same manner as provided for initial appointments. Individuals shall be eligible for reappointment to the hearing judge list.

C. Upon receipt of notification that a tenured teacher desires a hearing on his or her dismissal or nonreemployment as provided in Section 6–103.4 of this title, the Superintendent of Public Instruction shall, within ten (10) days of receipt of notification, designate twenty-one individuals on the hearing judge list to be eligible to act as hearing judge. The individuals so designated shall represent at least three geographic areas of the state. The State Superintendent shall send a list of such individuals to the tenured teacher and local board of education.

D. The tenured teacher and the local board of education, or its representative, shall select a hearing judge within twenty (20) days of receiving the hearing judge list by one of the two following methods:

1. If both parties agree on one individual from the list to act as a hearing judge, such individual shall serve as hearing judge; or

2. If the parties cannot agree on one individual to act as hearing judge, each party shall eliminate ten names from the list and the remaining individual on the list shall serve as hearing judge. In the process of elimination, each party shall eliminate no more than one name at a time, the parties alternating after each name has been eliminated. The first name to be eliminated shall be chosen by the tenured teacher.

### § 6–103.6. Scheduling of hearing

A. The hearing judge shall schedule a hearing on the tenured teacher's dismissal or nonreemployment within ten (10) days after the judge is chosen. Upon scheduling the hearing, the hearing judge shall immediately notify the teacher of the time and place for the hearing and the procedures provided by law and by the State Board of Education pursuant to this act to be followed in selecting a hearing judge.

B. The hearing shall be held in the school district in which the tenured teacher is employed or suspended, in the county seat or in some other mutually agreeable place.

C. In his consideration of educational issues, the hearing judge shall be counseled and assisted by a person designated by the local board of education and a person designated by the tenured teacher. These three (3) individuals shall compose the hearing panel.

### § 6–103.7. Procedural due process to be afforded

At the hearing, and until final disposition of the case, the district superintendent or his designee shall represent the local board of education. The tenured teacher and district superintendent or his designee, as the representative of the local board of education, shall be afforded procedural due process at the hearing, including the following rights:

1. To have counsel of his own choice present;

2. To present witnesses in person or to present their testimony by interrogatories, affidavits or depositions. A list of any witnesses which are to be presented shall be furnished to the other party at least five (5) days before the hearing is scheduled;

3. To testify in his own behalf and give reasons for any actions or policies;

4. To have an orderly hearing;

5. To have a fair and impartial decision based upon the evidence; and

6. To have an official transcript of the hearing made.

### § 6–103.8. Powers of hearing judge

At the hearing, the hearing judge may:

1. Administer oaths;

2. Issue subpoenas for the attendance and testimony of witnesses and the produc-

tion of books, papers and documents relating to any matter under investigation;

3. Receive evidence and limit lines of questioning and testimony which are repetitive, cumulative or irrelevant;

4. Call and examine witnesses and introduce into the record documentary and other evidence;

5. Preside over the course of the hearing and dispose of procedural requests, motions and similar matters; and

6. Take any other action necessary to make the hearing accord with administrative due process.

### § 6–103.9. Rules of evidence—Proof

A. The rules of evidence set forth in Section 310 of Title 75 of the Oklahoma Statutes shall apply to all hearings authorized by this act. The standard of proof shall be by the preponderance of the evidence and the burden of proof at the hearing shall be on the district superintendent or his designee, as representative of the local board of education, to establish that the teacher's dismissal or nonreemployment is warranted.

B. The State Board of Education shall develop uniform standards and procedures to be used at such hearings; provided, the hearings shall be governed in all respects by the provisions of the Oklahoma Administrative Procedures Act.

### § 6–103.10. Compensation of hearing panel—Costs

A. The members of the hearing panel shall be compensated for serving in such capacity in an amount to be determined in advance by the adoption of appropriate rules and regulations by the State Board of Education.

B. The local board of education and the tenured teacher shall each be responsible for fifty percent (50%) of the expenses and cost of the hearing and the official transcript, excluding attorney's fees of the parties involved.

### § 6–103.11. Written report—Contents

A. Within thirty (30) days from the time a hearing judge has been chosen, the hearing panel shall complete the hearing, prepare a written report and submit copies of the report to the superintendent of the school district and the tenured teacher. The report shall be written by the hearing judge. If the hearing panel cannot prepare the report within said period of time, the tenured teacher and superintendent of the school district shall be so notified prior to the end of such period. The hearing panel may then take additional time as is necessary, not to exceed forty (40) days from the time that the hearing judge was chosen, to prepare and submit the report. The tenured teacher and district superintendent or their designees may mutually agree to extend the time limit for preparation and submission of the report to an additional fifteen (15) days.

B. The report shall contain an outline of the scope of the hearing, findings of fact and conclusions of law and shall direct either of the following:

1. That the local board of education reinstate the tenured teacher with full employment status and benefits; or

2. That the decision of the local board of education for the dismissal or nonreemployment of the tenured teacher be sustained.

### § 6–103.12. Decision final

The decision of the hearing panel as contained in the report shall be final and shall be obeyed by the parties involved unless the tenured teacher or the district superintendent, as representative of the local board of education, appeals the decision to the district court. The provisions of the Oklahoma Administrative Procedures Act shall apply to such appeal.

### § 6–103.13. Hearing and appeal procedure

The applicable hearing and appeal procedure in the event of the dismissal or nonreemployment of a tenured teacher shall be that procedure provided by law on the effective date of such dismissal or nonreemployment.