Sarah M. CIPRIANO and Jeune
M. Miller, Plaintiffs,

v.

BOARD OF EDUCATION OF the CITY
SCHOOL DISTRICT OF the CITY OF
NORTH TONAWANDA, NEW YORK,
and North Tonawanda United Teachers,
Defendants.

No. CIV–84–80C.

United States District Court,
W.D. New York.

Sept. 19, 1991.

Bell, Boyd & Lloyd (Christopher G. Mackaronis, of counsel), Washington, D.C., for plaintiffs.

New York State United Teachers (Ira Paul Rubtchinsky, of counsel), Albany, N.Y., and Edward C. Cosgrove (Judith Blake Manzella, of counsel), Buffalo, N.Y., for defendants.

## BACKGROUND

CURTIN, District Judge.

This case, brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, is before the court on defendants' motion for reconsideration of the court's decision of December 7, 1988, granting partial summary judgment to plaintiffs. *See Cipriano v. Board of Educ. of Sch. Dist. of North Tonawanda,* 700 F.Supp. 1199 (W.D.N.Y.1988), *on remand from,* 785 F.2d 51 (2d Cir.1986).

Very briefly, the facts of the case are as follows. Plaintiffs Sarah M. Cipriano and Jeune M. Miller were teachers in the North Tonawanda school system. They both retired in June, 1981, at the age of sixty-five,

each having taught for more than twenty years. Both plaintiffs were employed under a collective bargaining agreement, effective July 1, 1980, through June 30, 1983, that offered early retirement incentives to those teachers between the ages of fifty-five and sixty who retired during the life of the contract and who had more than twenty years of service in the school system. Although plaintiffs met every other requirement of the retirement incentive, both exceeded the age limitation of the plan, and thus were ineligible for its benefits. Plaintiffs sued, claiming that the plan as a whole, and as applied to them, was discriminatory in violation of the ADEA. This court dismissed the case on defendants' motion for summary judgment, but was reversed, and the case was remanded by the Second Circuit. *Id.* On remand, the court rejected plaintiffs' argument that the retirement plan itself was discriminatory, *Cipriano*, 700 F.Supp. at 1211, but held that the plan was discriminatory as applied to plaintiffs. *Id.* The court held, further, that defendants' discriminatory actions toward plaintiffs were "willful" under the ADEA. *Id.* at 1211–12.

Defendants moved to reconsider this decision. After some delay, the motion was argued on June 23, 1989. That very day, the United States Supreme Court issued its decision in *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). The Court's opinion in *Betts* changed the law with respect to § 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2), the statutory defense relied on by the school board which was rejected by this court in its December, 1988, decision. Defendants now argue that this court must apply the *Betts'* standard retroactively to these facts. Defendants further argue that, under *Betts*, the court should reverse its prior decision.

## DISCUSSION

### I. MUST BETTS BE APPLIED RETROACTIVELY?

■ The Supreme Court in its most recent term has altered the rules of retroactivity of civil decisions as they apply in this case. *See James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). *James Beam*, although fractured in its ultimate conclusions, must be read to uphold at least the following principle: "it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so." *Id.* 111 S.Ct. at 2446 (Souter, J., announcing judgment of the Court). While Justice Souter is joined only by Justice Stevens in this conclusion, it is apparent that four other Justices would go as far. Justice White, concurring in the judgment because he believes that the case to be applied retroactively in *James Beam* could be so applied under any of several rationales, notes that there is "no precedent in civil cases applying a new rule to the parties in the case but not to others similarly situated...." *Id.* at 2448 (White, J., concurring in the judgment). Justices Blackmun, Marshall, and Scalia would go even farther. In separate opinions by Justices Blackmun and Scalia, each joined by all three Justices, these three members of the Court would "requir[e] retroactive application of each new rule we announce." *Id.* at 2450 (Blackmun, J., concurring in the judgment). Thus, even if Justice White's opinion is left out of the equation, five Justices of the Court have endorsed the principle that, in civil cases, where the Court has retroactively applied a newly announced rule to the case at hand, all lower courts must do likewise. In so holding, at least five Justices agree that the balancing-test analysis of *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971), relied upon by the dissent and by the plaintiffs in this case, is inapplicable to such a case.

This rule comports with established precedent in the Second Circuit. In *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239, 241 (2d Cir.), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984), the Second Circuit explained:

> Were we asked to decide if retrospective effect should be given to a new rule which our court had pronounced, the policy factors enumerated in *Chevron Oil*

*[Co. v. Huson]* would indeed be determinative.... Similarly, had the Supreme Court given no indication whether *DelCostello [v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)] should apply retroactively, a *Chevron Oil* analysis would also be in order. But these factors are not present here.... Thus, *when [the] Court itself has given retrospective application to a newly-adopted principle, "no sound reason exists for not doing so here."* Holzsager v. Valley Hospital, 646 F.2d 792, 797 (2d Cir.1981). A court of appeals must defer to the Supreme Court's directive on this issue, explicit or implicit.

(Emphasis added.) This reasoning has been acknowledged repeatedly by Second Circuit courts. *See Gonzalez v. Home Ins. Co.,* 909 F.2d 716, 723 (2d Cir.1990); *Cates v. Trans World Airlines, Inc.,* 561 F.2d 1064, 1073 (2d Cir.1977); *Adames v. Mitsubishi Bank, Ltd.,* 751 F.Supp. 1548, 1558 (E.D.N.Y.1990); *Fernandez v. Kogan,* 738 F.Supp. 795, 798 (S.D.N.Y.1990); *Song v. Ives Lab., Inc.,* 735 F.Supp. 550, 552 & n. 3 (S.D.N.Y.1990); *Kofer v. Village of Pelham,* 710 F.Supp. 483, 485 (S.D.N.Y.1989). *See also United States v. Fitzgerald,* 545 F.2d 578, 582 (7th Cir.1976).

■ Applying *James Beam* and *Welyczko* here, *Betts* must be given retroactive effect in this case. Not only did the Court, in *Betts,* apply its new standard to dismiss the case at hand, *Betts,* 492 U.S. at 182, 109 S.Ct. at 2868–69, but the Court subsequently remanded a court of appeals decision to be considered in light of *Betts, Westinghouse Elec. Corp. v. E.E.O.C.,* 493 U.S. 801, 110 S.Ct. 37, 107 L.Ed.2d 7 (1989), thus indicating the Court's desire that *Betts* be applied retroactively.

The irony of this conclusion is that immediately after *Betts,* Congress set about the task of expressly repudiating its holdings. Within sixteen months, Congress amended the ADEA by passing the Older Workers Benefit Protection Act, Pub.L. No. 101–433, 104 Stat. 978 (October 16, 1990) (codified at 29 U.S.C. §§ 621, 623), which stated:

The Congress finds that, as a result of the decision of the Supreme Court in *Public Employees Retirement System of Ohio v. Betts,* [492 U.S. 158] 109 S.Ct. 256 [2854, 106 L.Ed.2d 134] (1989), legislative action is necessary to restore the original congressional intent in passing and amending the Age Discrimination in Employment Act of 1967 (29 U.S.C. 621 et seq.), which was to prohibit discrimination against older workers in all employee benefits except when age-based reductions in employee benefit plans are justified by significant cost considerations.

29 U.S.C. § 621 (statutory note). This law, however, applies only prospectively. *See* 29 U.S.C. § 623 (statutory note).

Numerous courts have retroactively applied *Betts,* both before Congress' action, *Robinson v. County of Fresno,* 882 F.2d 444, 445–46 (9th Cir.1989); *Gabarczyk v. Board of Educ. of Sch. Dist. of Poughkeepsie,* 738 F.Supp. 118, 122–23 (S.D.N.Y.1990); *E.E.O.C. v. United Air Lines, Inc.,* 1990 WL 147056 (N.D.Ill. Sept. 26, 1990), and after, *E.E.O.C. v. Westinghouse Elec. Corp.,* 925 F.2d 619, 623 (3d Cir.1991) (*"Westinghouse II"*); *Bell v. Trustees of Purdue Univ.,* 761 F.Supp. 1360, 1363–65 (N.D.Ind.1991); *Grossman v. RCA Global Communications,* 1991 WL 44837 (S.D.N.Y. March 22, 1991). The court will now apply the *Betts* standards to the facts of this case.

## II. RETROACTIVE APPLICATION OF BETTS

■ Section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1), makes it unlawful for an employer

to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

In *Cipriano,* the Second Circuit held "[i]t is undisputed that, if it were not for § 4(f)(2) [of the ADEA, 29 U.S.C. § 623(f)(2)], the incentive plan would run afoul of § 4(a)(1) of the ADEA...." *Cipriano,* 785 F.2d at 53. Thus, the central question for that

court, and this court on remand, was whether the Board of Education and/or union had sustained its burden of establishing a § 4(f)(2) defense. *See Cipriano,* 700 F.Supp. at 1211–12.

*Betts,* however, completely undercuts the basic premise of that analysis. In *Betts,* the Court held that § 4(a)(1) did not prohibit discrimination in employee *benefit* plans, "so long as the plan is not a method of discriminating in other, non-fringe-benefit aspects of the employment relationship...." *Betts,* 492 U.S. at 177, 109 S.Ct. at 2866. The Court concluded that, in drafting the ADEA, "Congress left the employee benefit battle for another day, and legislated only as to hiring and firing, wages and salaries, and other non-fringe-benefit terms and conditions of employment." *Id.* For plaintiffs to prevail in this case they must now show that the Board of Education's retirement incentive "plan provision actually was intended to serve the purpose of discriminating in some non-fringe-benefit aspect of the employment relation." *Id.* at 181, 109 S.Ct. at 2868.

Plaintiffs cannot make this showing. The retirement incentive plan offered by the Board was clearly a "fringe benefit." As the Second Circuit found, it "did not compel plaintiffs to take early retirement." *Cipriano,* 785 F.2d at 58. This case was brought, "not by employees who claim that they were tricked by the option into prematurely leaving the workforce, but rather by employees who protest at having been excluded from the option." *Id.* Thus, the employee benefit plan at issue here did not discriminate in a "non-fringe-benefit aspect of the employment relationship," *Betts,* 492 U.S. at 177, 109 S.Ct. at 2866, and, as such, is outside the purview of the ADEA.

In oral argument, plaintiffs relied on two post-*Betts* appellate decisions to support their position that the North Tonawanda school board's retirement plan violated *Betts'* tougher requirements. The first case cited by plaintiff, *American Ass'n of Retired Persons v. Farmers Group,* 943 F.2d 996 (9th Cir.1991), is distinguishable from this case on its facts. In *Farmers Group,* the company amended an employee benefit plan to preclude pension payments, actuarial increases, and credits for those remaining with the company after age sixty-five. There was evidence this was done because the company wanted those over sixty-five to quit. *Id.* Because it impacted the *present* employment status of ADEA-protected employees, the company plan violated *Betts. Id.* Here, the retirement incentive had no impact on Sarah Cipriano's or Jeune Miller's wages or salaries, nor on their decision to stay or leave the school system.

The other case cited by plaintiffs, *Westinghouse II,* 925 F.2d at 627 & n. 13, is also of no help. Plaintiffs quote extensively from a footnote to the opinion which states that "the intentional use of a fringe benefit as an economic 'disincentive' to continued employment for older workers," *id.* at 627 n. 13, would meet the *Betts* test. The text accompanying the note reaffirms *Betts'* holding that an employer must intend an employee benefit plan "to discriminate against older workers with respect to a nonfringe benefit and the plans [must] ha[ve] that effect even if the path to that effect is an indirect one." *Id.* at 627. In *Cipriano,* plaintiffs are unable to make this showing. There is simply no proof that the North Tonawanda school board's early retirement incentive was "an economic disincentive" for plaintiffs to continue to work.

Accordingly, because plaintiffs cannot satisfy *Betts'* requirements, defendants' motion for reconsideration of this court's prior decision, *Cipriano v. Board of Educ. of Sch. Dist. of North Tonawanda,* 700 F.Supp. 1199 (W.D.N.Y.1988), is granted. That decision, to the extent it is inconsistent with this decision and order, is hereby vacated. Defendants' motion for summary judgment is granted.

Judgment shall issue in accordance with this decision and order.

So ordered.